**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| JOSHUA MCFERRIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:20-cv-31-JMB |
| | ) |
| CORIZON HEALTH, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Joshua McFerrin, an inmate at the Northeast Correctional Center ("NECC"), for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $47.44. Additionally, for the reasons discussed below, the Court will give plaintiff the opportunity to file an amended complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid.  *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing average monthly deposits in the amount of $237.18 and an average monthly balance of $33.51. The Court will therefore assess an initial partial filing fee of $47.44, which is twenty percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

This Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983 against Corizon Health, Inc., Dr. Unknown Lovelace, Dr. J. Cofield, Dr. Unknown Stevenson, Dr. Unknown McCullum, "Medical Director N.E.C.C.," Nurse Regina Goings, and Nurse Unknown Bredeman. Plaintiff states he sues Lovelace, Cofield, Stevenson, McCullum, Bredeman, and Goings in their individual capacities. He does not specify the capacity in which he sues "Medical Director N.E.C.C.". The complaint is organized into sections, including sections titled "Facts" and "Claims for Relief." In the section titled "Facts," plaintiff describes his medical condition, and alleges he received inadequate medical care. Condensed and summarized, his allegations are as follows.

While housed at the Bonne Terre Correctional Center, plaintiff experienced severe pain in his side, and he had acid reflux and began vomiting blood. He was examined by a doctor who noted plaintiff had an elevated right lung and fractured ribs, and recommended that plaintiff undergo evaluation of his gall bladder. Shortly thereafter, plaintiff was transferred to NECC.

On January 7, 2019, plaintiff sought treatment at NECC for his symptoms. He was seen on different occasions by nurses who examined him, gave him medication, and scheduled him to see a doctor at a later date. Plaintiff continued to have symptoms and was again seen by nurses who examined him and/or gave him medication. One nurse speculated that plaintiff's symptoms

3

indicated a failing gall bladder. On January 15, 2019 plaintiff was called to the pharmacy to retrieve a prescription for Zantac.

Plaintiff complains he did not see a doctor until January 16, 2019, at which time he saw Dr. McCullum. Dr. McCullum examined plaintiff and told him his symptoms could be caused by different things. He prescribed a course of Zantac and arranged a follow-up visit. On January 21, 2019, plaintiff provided blood and urine samples for testing. The next day, plaintiff saw Nurse Practitioner Crouch, who recommended an ultrasound of plaintiff's kidneys, gall bladder and liver.

For approximately six months, plaintiff tried in vain to obtain the ultrasound. He describes several medical visits in which he underwent evaluation, was given medications, and underwent laboratory testing that yielded normal results. He describes conversations with different people regarding the necessity of the ultrasound, and arguments between himself and Dr. McCullum about ordering it. He complains that Dr. McCullum initially opined that ultrasound was not indicated, but at a later medical visit decided to order it. Ultimately, the ultrasound was performed on August 5, 2019, and plaintiff saw Dr. McCullum afterward. Dr. McCullum reported that the ultrasound results were negative, and showed no problems with plaintiff's kidneys or gall bladder. Dr. McCullum recommended that plaintiff undergo further laboratory tests.

From September to October, 2019, plaintiff provided medical staff with samples for testing, but received no results. Plaintiff spoke to Bredeman, who told him that someone had "dropped the ball," and plaintiff would be required to provide new samples. On December 8, 2019, plaintiff's mother called Bredeman to inquire why plaintiff had not seen a doctor, and Bredeman advised that plaintiff had been inadvertently omitted from the list.

Four days later, on December 12, 2019, plaintiff saw Dr. Stevenson, who examined him and ordered testing. The testing revealed a Helicobacer Pylori ("H. Pylori") infection, and Dr.

4

Stevenson ordered antibiotic therapy. It is unclear whether plaintiff was given the antibiotic therapy. On January 17, 2020, plaintiff underwent radiological testing that was negative. A prison official told plaintiff's mother that a CT scan had been recommended, but on February 4, 2020 Dr. Stevenson said the request had been denied. Plaintiff does not include factual allegations regarding Lovelace, Cofield, Goings, or "Medical Director N.E.C.C."

In the section of the complaint titled "Claims for Relief," plaintiff claims that the defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, because they failed "to provide for correct and accurate diagnosis of plaintiff's sever [*sic*] medical conditions (still undiagnosed)." He also claims they failed to provide "necessary treatment," but he does not identify treatment that has been withheld. Plaintiff also claims the defendants are liable to him for failing to arrange for evaluation and testing by outside specialists, who would be able to provide an accurate diagnosis. Plaintiff claims the defendants were negligent and careless, and caused him to suffer by failing to "timely and accurately" diagnose him. He also claims that the policy of Corizon to refuse or delay treatment constitutes deliberate indifference.

## Discussion

The Eighth Amendment requires that inmates be provided with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). To prevail on an Eighth Amendment claim premised upon inadequate medical care, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. *Schaub,* 638 F.3d at 914. This requires the plaintiff to first show that objectively, he suffered from a "serious medical need," which is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's

attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted). Second, the plaintiff must show that subjectively, the defendant actually knew of, and yet deliberately disregarded, that need. *Schaub*, 638 F.3d at 914.

Deliberate indifference may be found when prison officials intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104–05. When a delay in treatment is the alleged constitutional violation, the objective severity of the deprivation is measured by reference to the effect of the delay in treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). Deliberate indifference may also be found where medical care is so inappropriate as to show intentional mistreatment. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014). However, deliberate indifference may not be found where there is merely a negligent failure to diagnose or treat a condition. *Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004).

In the case at bar, while plaintiff's allegations establish that he had a serious medical need, they do not establish that any defendant was deliberately indifferent to such need. While plaintiff appears to indicate that antibiotic therapy was not started immediately, it is unclear whether plaintiff intends to claim that such therapy was unconstitutionally delayed or denied. Plaintiff also mentions that a request for a CT scan was denied, but he alleges no facts from which the Court can discern a claim based upon such denial. Plaintiff does clearly allege that Drs. McCullum and Stevenson negligently failed to diagnose his condition. However, such allegations do not state a claim under the Eighth Amendment. *See id.* Similarly, plaintiff's allegations against Bredeman do not describe conduct that invades a federally-protected right. The Court therefore concludes that plaintiff has failed to state a claim upon which relief may be granted against Dr. McCullum, Dr. Stevenson, and Bredeman.

Plaintiff has also named Lovelace, Cofield, Goings, and "Medical Director N.E.C.C." as defendants in this action, and he claims they are liable to him. However, he does not allege that they engaged in any misconduct. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of pro se complaint against defendants who were merely listed as defendants in the caption and there were no allegations of constitutional harm against them). Finally, because plaintiff's allegations fall short of alleging a constitutional violation, there can be no claim against Corizon for any policies leading to one.

In consideration of plaintiff's *pro se* status, the Court will allow him to file an amended complaint. Plaintiff is advised that the amended complaint will replace the original. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on the Court's prisoner civil rights complaint form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms where applicable.").

In the "Caption" section of the complaint form, plaintiff should write the name of the person he intends to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff must avoid naming anyone as a defendant unless that person is directly related to his claim. Plaintiff must also specify the capacity in which he intends to sue the defendant. In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In

separate, numbered paragraphs under that name, plaintiff should set forth a short and plain statement of the facts that support his claim or claims against that defendant. *See* Fed. R. Civ. P. 8(a). Each averment must be simple, concise, and direct. *See id.* Plaintiff must state his claims in numbered paragraphs, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). If plaintiff names a single defendant, he may set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a). If plaintiff names more than one defendant, he should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2).

It is important that plaintiff allege facts explaining what the defendant did to violate his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citations omitted) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). Plaintiff must explain the role of the defendant, so that the defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim."). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $47.44 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to

"Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff must file an amended complaint within thirty (30) days from the date of this Order.

**Plaintiff's failure to timely comply with this order may result in the dismissal of this case, without prejudice and without further notice.**

Dated this 27th day of August, 2020.

                                               */s/ John M. Bodenhausen*
                                               JOHN M. BODENHAUSEN
                                               UNITED STATES MAGISTRATE JUDGE